**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Civ. No. 08-mc-37 (ADM/JJK) |
| Petitioner, | |
| v. | |
| Living Word Christian Center, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## I.   INTRODUCTION

This matter came before the undersigned Magistrate Judge pursuant to the provisions of Title 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and upon the Government's Petition to Enforce Internal Revenue Summons of the United States.[1]  For the reasons stated below, this Court recommends that the Petition be denied. The Internal Revenue Service failed to meet the test for the judicial enforcement of the summons because an "appropriate high-level Treasury official" has not made the necessary "reasonable belief" determination required by Congress before a church tax inquiry and examination of a church's records can occur.  26 U.S.C. §§ 7611(a)(2) and (h)(7).

---

[1]     When addressing a petition to enforce an Internal Revenue summons, a magistrate judge enters a report and recommendation rather than a final order. *See United States v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991); *see also United States v. Fond du Lac Reservation Bus. Comm.*, 906 F. Supp. 523, 525 (D. Minn. 1995) (adopting report and recommendation).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Respondent Living Word Christian Center ("LWCC") is a church, located in

Brooklyn Park, Minnesota.  (Doc. No. 11, Decl. of Reverend James M. Hammond

("Hammond Decl.") ¶ 1.)  In April 2007, the Internal Revenue Service ("IRS")

began investigating LWCC when the IRS received reports that the church may

have engaged in political conduct jeopardizing its tax-exempt status.  (Doc.

No. 5, Decl. of Patricia Schneiders ("Schneiders Decl.") ¶¶ 6, 7.)  The

investigation was also based on information the IRS received suggesting that

LWCC may have improperly conferred economic benefits on its senior pastor

Reverend James M. Hammond.  (*Id.* ¶ 6; Hammond Decl. ¶ 1.)  On April 20,

2007, the IRS notified LWCC by letter of the beginning of a church tax inquiry, a

preliminary step required by 26 U.S.C. § 7611(a) for investigations into the tax

status of a church.  (Schneiders Decl. ¶ 6, Ex. 1.)  The letter indicated that the

IRS began the church tax inquiry because "a reasonable belief exists that

[LWCC] may have engaged in activities jeopardizing its tax-exempt status as a

church . . . and in excess benefit transactions." (*Id.*)   It was signed by Marsha A.

Ramirez, the Director of Exempt Organizations, Examinations.  (*Id.*)

LWCC responded to the notice of church tax inquiry on June 8, 2007, by

providing some information to the IRS.  (*Id.* ¶ 9.)  Based on parts of LWCC's

response, the IRS concluded that no further inquiry into LWCC's political

activities was warranted.  (*Id.*)  Other parts of the response, however, confirmed

that LWCC leased planes owned by Hammond, Hammond borrowed money from

2

LWCC, and LWCC forgave a portion of Hammond's debt.  (*Id.*)  Because that

information did not convince IRS officials that LWCC had not violated the

inurement provision of 26 U.S.C § 501(c)(3),[2] or that Hammond had not engaged

in excess-benefit transactions,[3] the IRS opened a church tax examination[4] to

investigate LWCC's records.  (*Id.*)

As permitted by 26 U.S.C. § 7611(b)(2), LWCC scheduled a conference

with the IRS regarding the examination.  (*Id.* ¶ 11.)  However, LWCC canceled

the conference before it took place.  (*Id.*)  LWCC then asserted that the notice of

church tax inquiry was defective because it was not authorized by the

appropriate IRS official.  (Doc. No. 13, Decl. of Walter A. Pickhardt ("Pickhardt

Decl.") ¶ 2, Ex. 1 at 2.)  LWCC took the position that no valid church tax inquiry

had been initiated because the Internal Revenue Code requires "an appropriate

high-level Treasury official" to form a reasonable belief that the church's tax-

exempt status is in jeopardy.  (*Id.* ¶ 2, Ex. 1 at 1-2.)  LWCC asserted that the

---

[2]     According to 26 U.S.C. § 501(c)(3), tax-exempt organizations include only
those entities "no part of the net earnings of which inures to the benefit of any
private shareholder or individual."

[3]     According to the IRS, depending on the circumstances under which LWCC
used church funds to assist Hammond in financing the purchase of airplanes
which LWCC then leases from Hammond and pays to hangar, and depending on
the circumstances under which LWCC forgave certain loans it made to
Hammond,  Hammond may owe an excise tax under 26 U.S.C. § 4958.
(Schneiders Decl. ¶ 5.)

[4]     26 U.S.C. § 7611(b) (placing restrictions on examinations of church
records).

Director of Exempt Organizations, Examinations, the official who purportedly authorized the church tax inquiry into LWCC, did not qualify as an "appropriate high-level Treasury official" under the Internal Revenue Code or federal regulations.  (*Id.*)

Between December 2007 and February 2008, LWCC and the IRS exchanged communications regarding the initiation of the church tax inquiry and the church tax examination.  (*Id.* ¶ 3, Ex. 2 at 2-3; Schneiders Decl. ¶ 12.)  During these communications, LWCC again asserted that the church tax examination could not go forward because the church tax inquiry had not been properly commenced.  (Schneiders Decl. ¶ 12; Pickhardt Decl. ¶ 3, Ex. 2 at 2-3.)

The parties were unable to resolve their disagreement, and on March 21, 2008, the IRS issued an administrative summons to LWCC.  (Schneiders Decl. ¶ 13.)  The summons sought seven distinct categories of LWCC's records for the period between January 2004 and December 2006 including: (1) minutes of meetings for LWCC's Board of Directors and Finance Committee; (2) general ledgers; (3) journals, cash receipts, cash disbursements, accounts receivable and payable, and payroll records; (4) documents showing promissory notes, subordinate notes, and other debt instruments; (5) various compensation and expense information related to Hammond; (6) information related to the lease of a 1977 Citation Model 501 aircraft; and (7) information related to the lease of a Cessna Citation III aircraft.  (*Id.* ¶ 13, Ex. 3.)  The IRS asserts that it needs these

records in order to determine the legitimacy of LWCC's tax-exempt status as a church.  (Schneiders Decl. ¶ 19.)

In response to the summons, LWCC maintains that the IRS can not compel the production of church documents pursuant to the summons because the church tax inquiry was not properly commenced.  (Pickhardt Decl. ¶ 3, Ex. 2 at 6.)  As a result of LWCC's refusal to comply with the summons, on July 31, 2008, the IRS filed the current Petition to Enforce Internal Revenue Summons. (Doc. No. 1, Pet. to Enforce Internal Revenue Summons ("Petition").)  The Petition seeks an order directing LWCC to comply in full with the summons, recovery of costs to the United States in maintaining this action, and such other relief as is just.  (*Id.* at 5-6.)  The Petition also sought an order directing LWCC to show cause why it should not comply with the summons.  (*Id.*)  On August 12, 2008, this Court ordered LWCC to show cause why it should not be compelled to obey the administrative summons.  (Doc. No. 6.)

The parties filed memoranda and supporting documentation, and a hearing on the Petition was conducted on October 2, 2008.  Following the hearing, this Court ordered supplemental briefing to address the following questions:

> a. Should the Court give any deference to the agency's interpretation that the Director of Exempt Organizations, Examinations, is an "appropriate high-level Treasury official" within the meaning of 26 U.S.C. § 7611?

> b. If the Court should defer to such interpretation, then what level of deference should be given?

(Doc. No. 18.)  On October 16, 2008, the parties filed additional briefs addressing these issues.  (Doc. Nos. 19-20.)

LWCC opposes the Petition to enforce the administrative summons upon the following grounds: (1) the Director of Exempt Organizations, Examinations, is not an "appropriate high-level Treasury official" and, therefore, no valid church tax inquiry was ever initiated; (2) even if the Director of Exempt Organizations, Examinations, were an appropriate official, the authority to make the required reasonable-belief determination required was never appropriately delegated to her; (3) there is no evidence in this case that the Director of Exempt Organizations, Examinations, made the required reasonable-belief determination; (4) the summons is overly broad; and (5) the IRS did not comply with 26 U.S.C. § 7609 because the summons seeks information about Hammond in his personal capacity.  (Doc. No. 9.)

### III.   DISCUSSION

#### A.   Standard of Review

In order to determine the correctness of a tax return, the liability of any person for any internal revenue tax, and to collect any such liability, the IRS has the power to issue summons to examine relevant books, papers, records or other data, and to take the relevant testimony of any person.  26 U.S.C. § 7602(a).  Such summonses are not self-enforcing.  *In re Testimony of Arthur Anderson & Co.*, 832 F.2d 1057, 1059 n.2 (8th Cir. 1987).  If a taxpayer refuses to comply with the summons, the United States may seek judicial enforcement to compel

production of the information sought.  *United States v. Carter*, 988 F.2d 68, 69

(8th Cir. 1993).  In order to obtain judicial enforcement of the summons, the

government must establish a *prima facie* case by showing that: (1) the IRS

investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry

may be relevant to the purpose; (3) the information sought is not already within

the Commissioner of the IRS's possession; and (4) that the administrative steps

required by the Internal Revenue Code have been followed.  *See United States*

*v. Powell*, 379 U.S. 48, 57-58 (1964).  Once the IRS establishes a *prima facie*

case, the burden shifts to the summoned party to disprove one or more of the

*Powell* factors, or to "'demonstrate that judicial enforcement of the summons

would constitute an abuse of the court's process.'"  *United States v. John G.*

*Mutschler & Assocs., Inc.*, 734 F.2d 363, 367 (8th Cir. 1984) (quoting *United*

*States v. Lask*, 703 F.2d 293, 297 (8th Cir. 1983)).

The IRS must satisfy specific statutory requirements when it investigates

entities qualifying as tax-exempt churches.  *See United States v. C.E. Hobbs*

*Found. for Religious Training and Educ., Inc.*, 7 F.3d 169, 171-72 (9th Cir. 1993)

(citing 26 U.S.C. § 7611).  For instance, a church tax inquiry[5] may begin only if

notice is provided and if:

---

[5]     A church tax inquiry is defined as "any inquiry to a church (other than an examination) to serve as a basis for determining whether a church . . . is exempt from tax . . . by reason of its status as a church, or . . . is carrying on an unrelated trade or business . . . or otherwise engaged in activities which may be subject to taxation under this title."  26 U.S.C. § 7611(h)(2).

an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church . . . may not be exempt by reason of its status as a church, from tax . . . or . . . may be carrying on an unrelated trade or business . . . or otherwise engaged in activities subject to taxation under this title.

26 U.S.C. § 7611(a).  An "appropriate high-level Treasury official" is "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region."  26 U.S.C. § 7611(h)(7).  After the completion of a church tax inquiry,[6] the IRS may begin a church tax examination to inspect a church's records.[7]  *See* 26 U.S.C. § 7611(b).  Congress included these provisions to avoid misunderstandings between churches and the IRS, to solidify procedural requirements for church tax inquiries, and to protect the constitutional rights of churches in the audit process.  *See* discussion *infra* pp. 9-10, 25.

The requirements of 26 U.S.C. § 7611 have now been incorporated into the *Powell* test because that test "hing[es] summons enforcement upon a finding

---

[6]     The parties appear to agree that a church tax examination may only begin after the church tax inquiry concludes.  (*Compare* Doc. No. 2, Mem. in Supp. of Pet. to Enforce Internal Revenue Summons 9 *with* Doc. No. 9, Resp't's Mem. in Opp'n to Pet. to Enforce Internal Revenue Summons 14 n.4.)

[7]     "The term 'church tax examination' means any examination for purposes of making a determination described in [section 7611(h)(2)] of . . . church records at the request of the Internal Revenue Service, or . . . the religious activities of any church."  26 U.S.C. § 7611(h)(3).  A church tax examination may only be made if notice is provided, and examination of records may only be made to the extent necessary to determine the church's tax liability and the amount of such liability. Religious activities may only be examined to the extent necessary to determine the entity's status as a church for any period.  26 U.S.C. § 7611(b).

that the administrative steps required by the Code have been followed." *United States v. Church of Scientology of Boston, Inc.*, 739 F.Supp. 46, 48 (D. Mass. 1990) (quotations omitted), *aff'd*, 933 F.2d 1074 (1st Cir. 1991).  Thus, the summons should not be enforced—and the Petition should be denied—if the requirements of section 7611 have not been met.  *See id.* at 48 (noting additional administrative steps imposed by § 7611 in the church-tax-inquiry context).

## B.     "Appropriate High-Level Treasury Official"

The issue at the center of this dispute is whether the Director of Exempt Organizations, Examinations ("DEOE"), qualifies as an "appropriate high-level Treasury official."  As discussed above, LWCC argues that the DEOE is not an appropriate high-level official capable of making the reasonable-belief determination required by 26 U.S.C. § 7611(a).  This, LWCC argues, renders ineffective any reasonable-belief determination with respect to LWCC made by the DEOE and invalidates the church tax inquiry undertaken in this case.  The IRS argues that, given the restructuring of the IRS that took place after 1998, the DEOE now satisfies the definition of who is an appropriate high-level official. Some preliminary discussion of the regulatory framework and history at issue is helpful.

### 1.     Church Audit Procedures Act of 1984

On July 18, 1984, the Church Audit Procedures Act of 1984 ("CAPA"), Pub. L. No. 98-369, § 1033(a), 98 Stat. 494 (1984), was enacted "to give churches a special audit procedure to require the IRS to take greater care in the

examination of churches than [was] required under the [existing] law." 130 Cong. Rec. S4485-86 (daily ed. April 12, 1984). Taking note of the inexperience of churches in dealing with the IRS and the misunderstandings that arose as a result, Congress enacted the CAPA to do away with vague limitations on church tax investigations and heavy reliance on internal IRS procedures to protect the rights of churches in the audit process. *See* S. Rep. No. 98-169, 98th Cong., 2d Sess., Vol. I, 873 (1984).

The CAPA included a provision requiring a high-level official within the Treasury Department to form a reasonable belief that the church was no longer tax-exempt or had engaged in activities that jeopardized its tax-exempt status. H.R. Conf. Rep. No. 98-861, at 1101 (1984).[8] The CAPA's clarification of the meaning of the term "appropriate high-level Treasury official" has been codified at 26 U.S.C. § 7611(h)(7).

The IRS issued a regulation shortly after passage of the CAPA[9] interpreting the statutory definition of "appropriate high-level Treasury official" contained in 26 U.S.C. § 7611(h)(7). *See* 50 Fed. Reg. 9614-03, 9615 (March

---

[8]   The House Conference Report for the CAPA is silent on the specific reasons why the Regional Commissioner was chosen as the appropriate high-level official. H.R. Conf. Rep. No. 98-861, at 1101-14.

[9]   In March 1985, the IRS issued its interpretation in the form of temporary regulations. Treas. Reg. § 301.7611-1T, Q&A (1) (1985). These were accompanied by a notice of proposed rulemaking published in the Federal Register. 50 Fed. Reg. 9678 (March 11, 1985). The Treasury Department adopted the regulations following receipt of public comments and holding a public hearing. 51 Fed. Reg. 6219-03, 6220 (February 21, 1986).

11, 1985); *see also* Treas. Reg. § 301.7611-1T, Q&A (1) (1985).  The regulation provided that "[u]nder section 7611 of the Internal Revenue Code, the Internal Revenue Service may begin a church tax inquiry only when the *appropriate Regional Commissioner (or higher Treasury official)*" makes the reasonable-belief determination required by the CAPA.  Treas. Reg. § 301.7611-1T, Q&A (1) (emphasis added).  This same interpretation remains in effect today.  Treas. Reg. § 301.7611-1, Q&A (1).  Thus, the IRS originally interpreted the statutory definition's identification of "any delegate of the Secretary [of the Treasury] whose rank is no lower than that of a principal internal revenue officer for an internal revenue region" as authorizing Regional Commissioners to initiate church tax inquiries.  The IRS's identification of the Regional Commissioner as the appropriate official to make the required reasonable-belief determinations is not surprising given that the House Conference Report for the CAPA made the same selection.  H.R. Conf. Rep. No. 98-861, at 1101; *see also* 130 Cong. Rec. S4485-86 (daily ed. April 12, 1984) (statement of Sen. Grassley) ("[T]his provision requires an internal Revenue Service *Regional Commissioner* to begin an investigation of a church only if he or she reasonably believes . . .") (emphasis added).

### 2.    Internal Revenue Service Restructuring and Reform Act of 1998

The position of Regional Commissioner corresponded with the geographic organizational structure of the IRS prior to 1998.  *See* H.R. Conf. Rep. No. 105-599, at 193 (1998), *reprinted in* 1998 U.S.C.C.A.N. 288 ("1998 House Report").

Before 1998, the IRS was organized with a multi-tiered geographic structure with National, Regional, and District Offices, each having various responsibilities.  *Id.* As of 1995, the IRS operated through four regional offices, a Northeast, Southeast, Midstates, and Western region.  *Id.* at 193-94.  Each regional office included a Regional Commissioner.  *Id.*

In 1998, Congress directed the IRS to restructure itself.  IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1001(a), 112 Stat. 685 (1998). This restructuring involved "eliminating or substantially modifying the present-law three-tier geographic structure and replacing it with an organizational structure that features operating units serving particular groups of taxpayers with similar needs."  1998 House Report at 194; 1998 U.S.C.C.A.N. at 289; *see also* Pub. L. No. 105-206, § 1001(a)(2)-(3).  The purpose for reorganization along these lines was to "enable IRS personnel to understand the needs and problems affecting particular groups of taxpayers, and better address those issues."  S. Rep. No. 105-174, at 9 (1998).  "In other words, the organization of the Service was to be along type-of-taxpayer, not functional/geographic lines."  Saltzman, *IRS Practice and Procedure* ¶ 1.01[2] (2d ed. 2005).

Due to the reorganization, the position of Regional Commissioner no longer exists.  (Doc. No. 2, Mem. in Supp. of Pet. to Enforce Internal Revenue Summons ("Pet'r's Mem.") 21; Doc. No. 9, Mem. in Opp'n to Pet. to Enforce Internal Revenue Summons ("Resp't's Mem.") 8.)  Upon implementing the reorganization, Congress did not amend the statute's definition of "appropriate

high-level Treasury official" to reflect the new organizational structure it charged

the IRS to adopt.  Nor did the IRS undertake its rulemaking procedures to amend

its own interpretation of the statute in light of the agency's reorganization.

In November 2000, after abolishing the Regional Commissioner position in

connection with restructuring itself, the IRS delegated authority to other IRS

officials to take on the responsibilities of the Regional Commissioners.  (*See* Doc.

No. 3, Decl. of Thomas J. Miller ("Miller Decl.") ¶ 8.)  The delegation entrusts the

authority to "take actions previously delegated to . . . Regional Commissioners" to

"Assitant Deputy Commissioners, Division Commissioners; Chiefs; and Directors,

Submission Processing Field, Compliance Services Field, and Account

Management Field."  Delegation Order 193 (Rev. 6) (last revised November 8,

2000).  Believing that this delegation order gave the authority of Regional

Commissioners to "Directors" in general, the IRS reinterpreted the definition of

"appropriate high-level Treasury official."[10]  This reinterpretation provides that the

individual currently making the reasonable-belief determination required by 26

U.S.C. § 7611 is the Director of Exempt Organizations, Examinations.  *See, e.g.*,

Internal Revenue Manual § 4.76.7.4 (June 1, 2004) ("The IRS may begin a

church tax inquiry only when the Director, [Exempt Organizations] Examinations

reasonably believes . . ."); *see also* Memorandum from the Office of Chief

---

[10]   This Court assumes that the purported delegation was effective for the
purposes of this discussion only.

Counsel, IRS, on Procedural Matters Related to IRC § 7611 Follow-Up

Examinations and Delegation of Authority 6-9 (May 9, 2006).

### 3. General Deference Principles

As mentioned above, the central issue before this Court concerns the

IRS's interpretation that the DEOE qualifies as an "appropriate high-level

Treasury official."  If she does not, then the Petition must be denied because the

IRS has not shown that the administrative steps required by the Internal Revenue

Code have been followed.  *See Powell*, 379 U.S. at 57-58.  To resolve this issue,

this Court must first determine what level of deference, if any, is owed to the

IRS's interpretation.

The deference to be afforded an agency's interpretation depends both on

the legal authority being interpreted and the manner in which the agency issues

that interpretation.  *See, e.g.*, *Glover v. Standard Fed. Bank*, 283 F.3d 953, 961-

62 (8th Cir. 2002) (discussing degree of deference given to formal and informal

agency interpretations of congressional statutes and agency promulgated rules);

*see generally* 1 Richard J. Pierce, Jr., *Administrative Law Treatise* §§ 3.5, 6.11

(4th ed. 2002) (same).  A reviewing court must defer to an agency's formal

interpretation—i.e. through notice-and-comment rulemaking or formal

adjudication—of a statute it is charged with administering if the statute is unclear

or ambiguous and the agency's interpretation is reasonable.  *See Chevron*

*U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  Further,

under circumstances where "Congress would expect the agency to be able to

14

speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law," a court must accord *Chevron* deference to the agency's interpretation of an ambiguous statute even though "no . . . administrative formality was required and none was afforded." *United States v. Mead Corp.*, 533 U.S. 218, 229, 231 (2001).

Another form of deference—known as *Skidmore* deference—is due where the agency interprets an ambiguous statute by informal means not authorized by Congress, and where the interpretation lacks the force of law. *Id.* at 235. In such situations, the agency's interpretation is to be afforded "respect proportional to its 'power to persuade.'" *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1934)).

Yet another line of cases establishes the deference to be afforded an agency interpretation of ambiguous regulations authored by the agency itself. *See Glover*, 283 F.3d at 962. Under *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414 (1945), and *Auer v. Robins*, 519 U.S. 452, 461 (1997), an administrative interpretation of its own ambiguous regulation is controlling unless plainly erroneous or inconsistent with the regulation.

### 4.   *Skidmore* Deference Applies

This Court concludes that *Skidmore* deference applies to the IRS's interpretation for the reasons that follow. First, both parties appear to agree that the IRS has interpreted the language of the statutory definition of "appropriate

high-level Treasury official" rather than the language of a Treasury regulation.[11]

For instance, because the IRS argues that its interpretation is entitled to

*Skidmore* deference, it implicitly adopts the position that the IRS has interpreted

the language of the statute.  (Pet'r's Letter Mem. 3-7.)  LWCC also appears to

have taken the position that the IRS has interpreted a statute.  In its deference

memorandum, LWCC states that it is "aware of four published interpretations of

the *statutory* language."  (Resp't's Letter Mem. 1 (emphasis added).)  Therefore,

this Court will assume that the IRS has interpreted the statute.  *Cf. Colacicco v.*

*Apotex, Inc.*, 521 F.3d 253, 275 n.21 (3d Cir. 2008) (determining that "because

the FDA purports to interpret both the statutory and regulatory framework, we

believe it more prudent to apply *Skidmore* deference [rather than *Auer* deference]

which is the weaker of the two.").

Second, the statutory definition of "appropriate high-level Treasury official"

in 26 U.S.C. § 7611(h)(7) is ambiguous.  Deference is only due to the IRS's

interpretation of the statue if it is unclear or ambiguous.  *See Mead*, 533 U.S. at

231.  Section 7611(h)(7) refers to a delegate of the Secretary of the Treasury

"whose rank is no lower than that of the principal Internal Revenue officer for an

---

[11]    Neither party explicitly identifies whether the legal authority interpreted by the IRS is a statute in the Internal Revenue Code or a Treasury Regulation. Whether the IRS construed the statutory definition of "appropriate high-level Treasury official," or the gloss on that definition reflected in the Treasury regulations, could implicate different types of deference.  *See Glover*, 283 F.3d at 961-62 (distinguishing between deference owed to agency interpretations of statutes and interpretations of the agency's own regulations).

internal revenue region."  Prior to 1998, this definition may have foreclosed a reviewing court's determination that the statute was ambiguous.  The principal IRS officers for internal revenue regions at that time were the Regional Commissioners.  (Pickhardt Decl. ¶ 3, Ex. 2 at 10, IRS Orgnaization, FY 1997 (Documentary Draft).)  But the IRS is no longer composed of internal revenue regions.  Who, under the current IRS structure, is an equivalent IRS official to the "principal internal revenue officer for an internal revenue region" is no longer precisely answered by the statute.  The failure of Congress to redefine the meaning of "appropriate high-level Treasury official" since instructing the IRS to reorganize itself, and the elimination of the pre-1998 geographic structure, has rendered the statutory definition ambiguous.

Third, although the parties have identified several interpretations that could impact the level of deference to be given in this case[12] (Resp't's Letter Mem. 1-2; Pet'r's Letter Mem. 5-6), both the IRS and LWCC point to the interpretation in the Internal Revenue Manual (the "Manual") as the most formal expression of the

---

[12]     For example, LWCC identifies the interpretation in Treas. Reg. § 301.7611-1, Q&A (1), appointing the Regional Commissioner as the appropriate official, but that interpretation is not applicable here.  However, the interpretation at issue in this case – that the DEOE is an appropriate high-level official – is not expressed in that regulation.  LWCC also identifies interpretations in "Publication 1828, Tax Guide for Churches and Religious Organizations . . .; and Chief Counsel Advice . . . 200623061."  (Resp't's Letter Mem. 1-2.)  Because neither of these interpretations appear to be as formal an expression of the interpretation as that in the Manual, this Court will not address them.

IRS's position (Pet'r's Letter Mem. 3; Resp't's Letter Mem. 1-2).  Therefore, the
"interpretation" at issue in this case is that expressed in the Manual.

Although the interpretation in the Manual does not carry the force of law, it
is nevertheless entitled to *Skidmore* deference.  LWCC relies on four cases,
*Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *Carlson v. United
States*, 126 F.3d 915, 922 (7th Cir. 1997), *United States v. Horne*, 714 F.2d 206,
207 (1st Cir. 1983), and *Chavez v. United States*, Civil No. EP-03CA-303(KC),
2004 WL 1124914, at *4 (W.D. Tex., May 18, 2004), in support of its argument
that the interpretations expressed in the Manual are entitled to no deference.
(Resp't's Letter Mem. 6.)  In *Fargo* and *Horne*, the reviewing courts rejected the
taxpayers' arguments premised on provisions in the Manual because its
provisions do not have the force and effect of law.  *Fargo*, 447 F.3d at 712-13;
*Horne*, 714 F.2d at 207.  Similarly, the courts in both *Carlson* and *Chavez* stated
that no deference was owed to the Manual because the Manual does not confer
rights or obligations on taxpayers.  *Carlson*, 126 F.3d at 922; *Chavez*, 2004 WL
1124914, at *4.  Therefore, these cases appear to stand for the proposition that
interpretations in the Manual are not entitled to *Chevron*-style deference because
the Manual does not have the force of law –it is not the product of formal agency
procedures and it cannot bind taxpayers or the agency.  *Cf. Mead*, 533 U.S. at
231 (noting that *Chevron* deference is not due to interpretations that lack the
force of law).

There is no question that the IRS did not invoke its rulemaking authority and test the interpretation at issue in the Manual through notice-and-comment rulemaking.  Nor does it appear that there are "other circumstances reasonably suggesting that Congress ever thought of [Internal Revenue Manual provisions] as deserving [*Chevron*] deference."  *See Mead*, 533 U.S. at 231.  *Mead*, however, makes clear that although an agency's interpretation of a statute fails to have the force of law, it should be reviewed according to the deference principles of *Skidmore.*  533 U.S. at 237 ("*Chevron* left *Skidmore* intact and applicable where statutory circumstances indicate no intent to delegate general authority to make rules with force of law, *or where such authority was not invoked*.") (emphasis added).  Further, the Eighth Circuit has reviewed agency manuals and similar informal statements of agency interpretations according to the deference factors identified in *Skidmore*.  *See Clark v. United States Dep't of Agric.*, 537 F.3d 934, 941 (8th Cir. 2008) (applying *Skidmore* deference to an agency's interpretation of a statutory term expressed in an opinion letter and in the National Food Security Act Manual); *St. Mary's Hosp. of Rochester, Minn. v. Leavitt*, 416 F.3d 906, 914 (8th Cir. 2005) (applying *Skidmore* deference to agency's interpretation of a statutory term expressed in an opinion letter).  And the Seventh Circuit has applied *Skidmore* deference to an interpretation of the IRS stated in the Manual.  *Matz v. Household Int'l. Tax Reduction Inv. Plan*, 265 F.3d 572, 575 (7th Cir. 2001) (concluding that although position stated in IRS amicus brief and in the Manual was not entitled to *Chevron* deference, it was

entitled to *Skidmore* deference).  For all the foregoing reasons, this Court will apply "*Skidmore* deference" to the IRS's interpretation as expressed in the Manual.

### 5.    Application of *Skidmore*

In applying *Skidmore* deference, "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."  *Mead*, 533 U.S. at 228 (citing *Skidmore,* 323 U.S. at 139-40).  This deference involves a judicial determination of whether "the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if [the court] might not have adopted that construction without the benefit of the agency's analysis."  *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005).  A reviewing court should look to whether the interpretation is "among the meanings . . . consistent with the language of the statute."  *See* 1 Pierce, *supra* § 6.4, p. 335 (discussing reasons a court upholds agency interpretations expressed in informal interpretative rules).  Thus, if the agency's position is inconsistent with the language of the statute, the agency's interpretation lacks the power to persuade.

LWCC contends that, even when reviewing the IRS's interpretation under *Skidmore*, this Court should give no more consideration to that interpretation than to briefs filed by parties to litigation (*Id.* at 4, 7); at oral argument LWCC

characterized the deference due as equivalent to that owed the mere litigating

positions of the parties.  The IRS, on the other hand, argues that this Court

should defer to its interpretation under *Skidmore* because (1) the IRS devoted a

high degree of care to establishing the interpretation, (2) it has interpreted the

provision consistently, (3) it engaged in a relatively formal process in reaching

the interpretation, (4) it has the requisite expertise to understand provisions of the

Internal Revenue Code, and (5) the interpretation is persuasive on its merits.

(Pet'r's Letter Mem. 4-7.)

　　　This Court rejects LWCC's argument that no deference is due.  There is

nothing in the record to suggest that the IRS's interpretation is a post hoc

rationalization advanced by the IRS in defense of past agency action.  *Cf. Lovilla*

*Coal Co. v. Harvey*, 109 F.3d 445, 452 (8th Cir. 1997) (rejecting mere-litigating-

position argument in review of agency's interpretation of its own rule).  "'There is

simply no reason to suspect that the [IRS's] interpretation does not reflect the

agency's fair and considered judgment on the matter in question.'"  *See id.*

(quoting *Auer*, 519 U.S. at 462).  This Court also rejects LWCC's argument that

applying *Skidmore* deference involves giving no more consideration to the

agency's interpretation than would be given parties' briefs.  Such a standard

would mean that "*Skidmore* deference would entail no deference at all."

*Cathedral Candle Co.*, 400 F.3d at 1366.

　　　At a minimum, the IRS's interpretation appears to remain consistent.  The

DEOE is the sole official who has made reasonable-belief determinations to

initiate church tax inquiries since the elimination of the Regional Commissioner's position.  (*See* Pet'r's Letter Mem. 5.)  The IRS has asserted, and this Court has no reason to doubt, that developing the process by which the DEOE makes the statutorily required reasonable-belief determination "took time and attention" and was done with care.  (*See* Pet'r's Letter Mem. 5.)

However, the IRS's interpretation lacks the formality of notice-and-comment rulemaking.  *See Mead*, 533 U.S. at 228 (instructing courts to consider, under *Skidmore*, the formality of an agency's decision).  And, the IRS's deliberate choice to avoid subjecting this interpretation to formal rulemaking causes this Court some concern.  This concern is heightened given the opportunituy the IRS has had to formalize the interpretation since the almost decade-old elimination of the position of Regional Commissioner.  The public deliberation that would occur as a result of formal rulemaking would be an important part of identifying the types of First Amendment concerns that motivated the enactment of the CAPA in the first place.  *See* discussion *supra* p.10.  The IRS's arguments to the contrary regarding the formality of the process of delegating authority to the DEOE do little to alleviate this Court's concern.

Although the IRS has unique expertise in matters of federal taxation (i.e. it has the expertise to interpret technical and complex matters within the Internal Revenue Code), deciding who should be designated as the high-level Treasury official who makes the reasonable-belief determination does not require the IRS's technical tax expertise.  It involves an interpretation of a statutory requirement

that the decision to examine church records be made by an official whose

experience and level of political accountability will make it more likely that there

will not be undue government intrusion into religious affairs.  Where, as here, the

issue of statutory interpretation is not highly technical and does not involve

administration of a matter of great complexity, the deference afforded the

interpretation is not as great.  *See Frank Diehl Farms v. Sec'y of Labor*, 696 F.2d

1325, 1330 (11th Cir. 1983) (providing little deference where interpretive ruling

"did not involve a technical matter, but rather involved a statutory construction

well within the courts' expertise"); *cf. Krzalic v. Republic Title Co.*, 314 F.3d 875,

878-79 (7th Cir. 2002) (citing *Glover*, 283 F.3d at 961-63, for the proposition that

"[t]he more technical the issue is, . . . the greater the deference that a reviewing

court will give"); *Pronsolino v. Nastri*, 291 F.3d 1123, 1133 (9th Cir. 2002)

(considering the informative nature of an agnecy's interpretation under *Skidmore*

when the statutory provision interpreted is part of an "intricate statuory scheme

addressing technically complex . . . issues" and when the agency is "[c]onfronted

with an issue dependent upon, and the resolution of which will affect, a

complicated, science-driven statute").

Arguing that the IRS's interpretation is ultimately unpersuasive on its

merits, LWCC contends that to have a rank equivalent to that of the Regional

Commissioner, the high-level official must have direct reporting responsibilities to

the Commissioner of the IRS.  LWCC asserts that the DEOE does not have

responsibilities over the many different IRS functions and types of taxpayers as

23

did the Regional Commissioner, and contends that such a broad perspective is

essential to an understanding of the church-state concerns underlying section

7611.[13]  (Resp't's Mem. 24.)  The IRS argues that its interpretation is persuasive

because: (1) the reorganization of the IRS into type-of-taxpayer components

transformed the analysis of whether an official has a "rank" equivalent to the

Regional Commissioner so that equivalence of rank depends upon the degree of

the official's authority over exempt organization examinations; (2) even if

Congress was concerned with the broad perspective of the high-level official

when it drafted the CAPA, the reorganization of the IRS occurred pursuant to a

later-expressed congressional intent to focus on specialization; and (3) an

interpretation based on an official's reporting proximity to the Commissioner

ignores that later-expressed congressional intent.  (Pet'r's Mem. 17, 24; Pet'r's

Letter Mem. 7.)

   The IRS's interpretation is not persuasive.  In order to determine whether

---

[13]   LWCC also contends that the interpretation expressed in the Manual has
no power to persuade because the Manual contains "nothing more than
declarative sentences assigning the duty to make reasonable belief
determinations to the [DEOE].  They provide no reasoned analysis and they have
no power to persuade."  (Resp't's Letter Mem. 7.)  LWCC specifically is referring
to the expressions in sections 4.76.7.4 and 4.76.7.4.1 of the Manual, which
respectively provide that "[t]he IRS may begin a church tax inquiry only when the
[DEOE] reasonably believes . . ." and "[b]efore a notice of church tax inquiry can
be sent, the [DEOE] must 'reasonably believe' it is necessary."  However, LWCC
offers no support for the proposition that a final expression of an interpretation
has no power to persuade under a *Skidmore* analysis simply because the
agency's reasoning does not accompany it.  This Court does not believe that the
statements in the Manual encapsulate the extent of the IRS's consideration of the
interpretation prior to including it in the Manual.

the DEOE is a sufficiently high-level Treasury Official to make the reasonable-belief determination one must first recognize that the Constitution protects religion from undue government intrusion.  Congress, when it enacted the CAPA, was aware of the potential problems—including the government's possible into church affairs and into the special relationship between a church and its members—that arise when the IRS examines a church's records.  H.R. Conf. Rep. 98-861, at 1101.  Congress believed that section 7611 created a balance that would protect the rights of legitimate churches without unduly hindering the IRS's efforts to eliminate church tax-avoidance schemes.  Staff of Joint Comm. on Taxation, 98th Cong. 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 at 1139-1140 (Comm. Print 1984).  Thus, Congress intended for "the IRS [to] begin a church tax inquiry only if the IRS regional commissioner (or higher official)" made a reasonable-belief determination first.  H.R. Conf. Rep. 98-861, at 1101.  In other words, due to concerns about the separation of church and state and the inherent tension in church-state relations, Congress clearly wanted the decision to investigate a church to be approved by a high-level Executive Branch official.  The broad responsibilities and experience of an official with such a high-profile position would make it likely that she has a heightened political and policy sensitivity for balancing the need for vigorous enforcement of our tax laws and the avoidance of excessive government intrusion into a church's exercise of religious freedom.

It is important to note that the Regional Commissioners held the *minimal*

level of authority and rank required by the statute.  Under 26 U.S.C. § 7611(h)(7) the range of qualifying officials only extends as far as a "delegate of the Secretary whose rank is *no lower than* that of a principal Internal Revenue officer for an internal revenue region."  (Emphasis added).  The Regional Commissioner had authority over the District Offices in a region, where direct contact with taxpayers would be made in connection with examinations, collections, and criminal investigations.  (Doc. No. 12, Declaration of Marcus S. Owens ("Owens Decl."), ¶ 7, Ex. F.)  Each Regional Commissioner had broad authority over all taxpayers in the region and over an array of IRS functions including examinations, collections, data processing, resources management, and criminal investigations.  The fact that the official with the minimal level of authority permitted under the statute to make the reasonable-belief determination had such broad responsibility cuts against the IRS's interpretation that the DEOE's specialized focus on examinations of exempt organizations qualifies her as an appropriate high-level Treasury official.

As described above, in 1998, Congress directed the IRS to "develop and implement a plan to reorganize" that would "eliminate or substantially modify the existing organization of the Internal Revenue Service which is based on a national, regional, and district structure."  Pub. L. No. 105-206, § 1001(a)(2).  The reorganization had the effect of changing the geographic structure of the IRS to a structure based on taxpayer type.  Instead of four geographic regions, each headed by a Regional Commissioner, the IRS was reorganized into four national

divisions organized by taxpayer-types including:  Large and Mid-Size Business

Division; Small Business/Self Employed Division; Wage and Investment Division;

and, of particular relevance here, the Tax Exempt and Government Entities

Division.  (Owens Decl. ¶ 4, Ex. C.)  Just like the four regions in the old structure,

each of the four taxpayer-type divisions, including the Tax Exempt and

Government Entities Division, has its own Commissioner who reports up the

chain to the Deputy Commissioner, Services and Enforcement, who in turn

reports to the Commissioner of Internal Revenue.  (*Id.* ¶ 5, Ex. D.)

　　　After the reorganization, the IRS did not redelegate the responsibility to

conduct the reasonable-belief determination to initiate a church tax inquiry to the

Commissioner of Tax Exempt and Government Entities, the high-level official

position—head of a taxpayer division—which is the logical counterpart to the

Regional Commissioner.  Rather, it devolved the responsibility down two levels of

authority below the Commissioner of Tax Exempt and Government Entities.  The

IRS explained the downward delegation as follows:

> The Commissioner of the Tax Exempt & Government Entities
> division of the IRS delegated responsibility for the Exempt
> Organizations component's enforcement strategy, including the
> development and implementation of the EO returns classification
> and selection process and case review and closing procedures to
> the Office of Exempt Organizations.  [Internal Revenue Manual] at §
> 1.1.23.53.  This delegation includes the authority to "[r]egulate[] and
> monitor[] exempt organizations through examination of returns, with
> emphasis on assuring that exempt organizations continue to meet
> the statutory requirements for exemption and their other federal tax
> responsibilities, including employment taxes." *Id.* at § 1.1.23.5.4(F).
> The Director of Exempt Organizations, in turn, delegated to the
> Director EO Exam the specific authority to initiate church tax

inquiries.  *Id.* at § 4.76.7.4(1).

(Pet'r's Letter Mem. 5-6).

As a result, the reasonable-belief determination to initiate a church tax inquiry was delegated to the DEOE, who is four management levels removed from the Commissioner of Internal Revenue, whereas pre-reorganization, the Regional Commissioners were one level removed.  As her title suggests, the DEOE's authority is limited to the area of examinations of exempt organizations alone, unlike the former Regional Commissioners who had broad authority over the wide array of IRS functions and all taxpayer-types within a region described above.  *See* discussion *supra* p. 25-26.  The DEOE oversees examinations of exempt organizations, supervises managers of such examinations, makes staffing decisions, develops work plans for such examinations; and develops policies, procedures, and guidelines for such examinations.  (Ramirez Aff. ¶¶ 4, 7-10.)  Although the duties of the DEOE are national in scope, she is still an examiner, indeed the chief examiner, of tax exempt organizations including churches.  It is at odds with the legislative purpose of vesting the authority to halt over-zealous examination of churches in a high-level Treasury official to then delegate this watchdog responsibility down to the director of church examinations.

This conclusion is buttressed by the statute's use of the terms "high-level" and "rank."  "Rank" is defined as "[a]n official position or grade."  *Am. Heritage Dictionary* 1449 (4th ed. 2000).  "High-level" means "[b]eing at an elevated level

in rank or importance: *a high-level official*." *Id.* at 828 (emphasis in original).

Despite the ambiguity in 26 U.S.C. § 7611(h)(7)'s definition created by the 1998

reorganization,[14] neither the meaning of these terms nor the underlying purpose

behind the high-level-official requirement were altered.  Though the IRS

characterizes LWCC's comparison of IRS organizational charts before and after

the 1998 reorganization as overly formalistic, this Court does not agree.  The IRS

has, at least purportedly, delegated the responsibility for § 7611's reasonable-

belief determinations to the DEOE, who is at least four steps removed from the

Commissioner of Revenue.  (*See* Pickhardt Decl. ¶ 3, Ex. 2 at 11 – IRS

Organization Chart (2007-2008).)  A sensible reading of the terms "high-level"

and "rank" illustrates that through its devolution of authority, the IRS has placed a

responsibility formerly in the hands of an official (the Regional Commissioner)

with "an elevated level in rank or importance," into those of an official much less

"elevated . . . in rank." *See Am. Heritage Dictionary* at 828.  An interpretation so

antithetical to the purpose of including the high-ranking-official provision in the

CAPA could not have been intended by Congress when it ordered the IRS to

reorganize itself. *See Matz*, 265 F.3d at 575 (rejecting as unpersuasive under

*Skidmore* an interpretation expressed in an amicus brief by the IRS and in the

IRS Manual because the interpretation would not further statutory purposes); *see

also* Pierce, *supra* § 6.4, p. 335 (discussing the rationale that agency

---

[14]     *See* discussion *supra* pp. 16-17.

interpretations should be upheld if they are "among the meanings that [are] consistent with the language of the statute").

This Court, having applied *Skidmore* deference, ultimately concludes that the IRS's interpretation that the DEOE is an "appropriate high-level Treasury official," within the meaning of 26 U.S.C. § 7611, is unpersuasive.  As a result, this Court also concludes that the church tax inquiry was not undertaken in accordance with the procedures required by § 7611(a).  Because the church tax inquiry was not commenced according to the administrative steps required by the Internal Revenue Code, enforcement of the summons would be inappropriate under *Powell*.  *See* 379 U.S. at 57-58 (requiring the IRS to comply with administrative steps required by the Internal Revenue Code to enforce an administrative summons).

**C.      LWCC's Remaining Arguments**

LWCC also argues that the summons is overly broad because it demands the production of documents that are not necessary to the issues the IRS claims it wants to examine.  Since the IRS has not met its burden to establish that it has complied with the requisite administrative steps to obtain enforcement of the summons, this Court does not need to review the proper scope of the summons. If the IRS chooses to continue this investigation, it will presumably have the reasonable-belief determination made by an appropriate high-level Treasury official and it would be premature for this Court to rule on the proper scope of the summons unless and until the administrative process is exhausted.

The same holds true for LWCC's other remaining arguments.  LWCC's argument that to the extent the summons is directed at Hammond it constitutes a third-party summons under § 7609, and that accordingly the IRS was obligated to provide notice of the summons to Hammond, is mooted by the fact that this Court has recommended that the Petition to enforce this summons be denied.  For the same reason, this Court need not address LWCC's arguments that the purported delegation of authority to the DEOE was not effective, nor that there is no evidence that the DEOE actually made the reasonable-belief determination in this case.  In reaching the conclusion that the Petition to enforce the summons should be denied, this Court offers no opinion about the merits of these additional arguments.

## IV.   RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.      Petitioner's Petition to Enforce Internal Revenue Summons (Doc. No. 1) be **DENIED**; and

2.      this action be **DISMISSED**.

Date: November 18, 2008

s/Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 1, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.